THOMPSON (Raymond), J. pro tem.
 
 *
 

 After accusation and hearing before a hearing officer who recommended revocation, respondent board concurred and petitioner’s license as a nurse was revoked. He was accused and found to have taken Librium, a prescription drug, without authorization from Patton State Hospital where he was employed, and gave some of said drug to one Glenna Marie Jermain who had been a patient at the hospital and was on probation for narcotics involvement.
 

 In February 1963, at the Patton State Hospital where petitioner was employed, he met Glenna Marie Jermain, a patient. He knew that she had been addicted to narcotics and dangerous drugs. When she left the hospital, he maintained contact with her. On or about February 11, petitioner took
 
 *461
 
 some Librium capsules from a medicine cabinet at the hospital without a physician’s prescription or other authorization. A few days prior to February 18, Miss Jermain came to live with petitioner. Petitioner knew she was on probation because of an offense involving dangerous drugs and narcotics. On that day Miss Jermain had petitioner’s automobile and was supposed to have picked up petitioner at his place of work but failed to do so. Petitioner looked for his car and found it parked by the courthouse. Upon inquiring in the courthouse, he found Miss Jermain had been arrested and was there. The desk sergeant advised that Lieutenant Shepherd wished to talk to him. Lieutenant Shepherd, Detective English and petitioner had a conversation wherein petitioner was told Miss Jermain was in custody and capsules had been found at the residence of Miss Jermain and petitioner. Petitioner admitted to the officers that he had taken the capsules from the hospital to his home, used a few of them himself and given some to Miss Jermain. He admitted knowing they were prescription drugs and that it was wrong for him to have them.
 

 Detective English was called as a witness at petitioner’s hearing and, after numerous objections and discussion, testified to the conversation above recited. Petitioner contends the search of his apartment was unlawful and therefore, as fruit of the poisoned tree, his admissions to Detective English should have been excluded.
 

 The proceeding before the hearing officer was somewhat informal and the record is not altogether satisfactory as the basis for presentation of problems suggested by petitioner. It seems conceded, however, that the search uncovering the incriminating capsules was pursuant to the consent of Miss Jermain who was then residing with respondent. A deputy attorney general, representing respondent board, made the following statement for the record: 1 ‘Mrs. Cutler : To have it fully clear on the record, I don’t believe there is any dispute to the fact that a woman by the name of Glenna Marie Jermain was living at the residence of Tyree Pierce. This woman, Glenna Jermain, was currently on probation and the probation officer requested permission from Glenna Jermain to have the police officers search the premises where she was living. According to the report which Miss Jermain gave the probation department, her address was 132 East Bryant, San Bernardino, California, which was the residence of the respondent, Tyree Pierce,
 

 
 *462
 
 “Miss Jermain, currently on probation, gave full, free, and voluntary consent to the probation officer to have the premises where she was living searched. So there was complete consent on the part of Miss Jermain. ’ ’
 

 Petitioner’s counsel made no response to the foregoing but proceeded to argue a legal point and cite an authority. Petitioner in his opening brief filed in this court states facts as follows: “The evidence shows that on or about February 18, 1963, appellant was living at 132 Bast Bryant Street, in the City of San Bernardino. On or about February 18, 1963, a Mrs. Grlenna Marie Germain
 
 [sic]
 
 gave Sheriff’s office permission to search the house of appellant at that address. The residence was that of the appellant at the time. . . . Appellant was not married to Mrs. Germain
 
 [sic]
 
 and Mrs. Germain
 
 [sic]
 
 had been a houseguest of appellant for just a few days.
 

 “As a result of the search the police officers obtained twenty three librium capsuls
 
 [sic].”
 
 Petitioner contended at the time of the hearing and presently contends that rules applicable in criminal eases excluding evidence illegally obtained should apply in administrative proceedings like this hearing involving revocation of a nurse’s license. We do not wish to intimate a belief that these rules apply in administrative proceedings, especially in one involving fitness of a person to be licensed in a healing art where the welfare of sick and helpless persons depends on his integrity, fidelity and skill. Historically, Fourth Amendment immunities relate only to criminal proceedings. (See
 
 Camden County Beverage Co.
 
 v.
 
 Blair,
 
 46 F.2d 648, 650.) We are aware, however, of
 
 People
 
 v.
 
 One 1960 Cadillac Coupe,
 
 62 Cal.2d 92, 96-97 [41 Cal.Rptr. 290, 396 P.2d 706], holding the Fourth Amendment exclusionary rule applicable in a forfeiture ease characterized as quasi-criminal in nature. Also in the case of
 
 Elder
 
 v.
 
 Board of Medical Examiners,
 
 241 Cal.App.2d 246, 260 [50 Cal.Rptr. 304], cert. den. 385 U.S. 1001 [17 L.Ed.2d 541, 87 S.Ct. 701], it was assumed the exclusionary rule would apply in a case to revoke a physician’s right to practice medicine. This question need not be explored, however, because even assuming exclusionary principles apply here, the evidence was properly admitted for two reasons, (1) the search was made incidental to a valid arrest of Miss Jermain by her probation officer, and (2) Miss Jermain consented.
 

 Most of what appears in the record regarding details of the
 
 *463
 
 search is contained in the hearsay testimony of Detective English. He was not present at the arrest of Miss Jermain and only knew what he had been told by the arresting officers. He was asked if there was a search warrant and answered, “No, not to my knowledge.” Although this was hearsay and not sufficient to support a finding by the hearing officer in an administrative proceeding (Gov. Code, § 11513, subd. c). we will assume the statement sufficient to shift the burden of proof to respondent board in showing the propriety of the search. (See
 
 People
 
 v.
 
 Paris,
 
 63 Cal.2d 541, 545 [47 Cal.Rptr. 370, 407 P.2d 282].) That Miss Jermain and petitioner were residing together appears not only from the hearsay recital of Detective English, but also was testified to by petitioner.
 

 We believe the record here does show a proper search since it was in connection with and incidental to the arrest of a third person, namely, Miss Jermain, with a further showing that Miss Jermain fully and freely consented. As a probationer, Miss Jermain was in constructive custody of the probation officer. She was subject to arrest without a warrant. (Pen. Code, § 1203.2.)
 

 The prescription drugs (Librium) were admitted into evidence as well as petitioner’s incriminating statements in reference thereto, and properly so. Law officers obtained the capsules, after the lawful arrest of Miss Jermain, in the apartment jointly occupied by her and petitioner. Possession of the capsules was taken in connection with the involvement _ of Miss Jermain. The capsules were thus legally in the officers’ custody. After taking possession of the capsules and upon inquiry of petitioner, it was ascertained that he was also connected with them. The record shows the capsules involving petitioner and leading to revocation of his nurse’s license were the identical ones incriminating Miss Jermain in the matter of her arrest. The following, elicited by petitioner’s counsel, appears in the transcript: “Q. By Mr. McDaniels: Detective English, to the best of your knowledge, was this exactly the same evidence involved with Mrs. Jermain?
 

 “A. To the best of my knowledge, it was.” The capsules and the statement of petitioner in reference thereto were not rendered inadmissible by the process through which the capsules came into possession of respondent board.
 
 (People
 
 v.
 
 Ghimenti,
 
 232 Cal.App.2d 76, 81 [42 Cal.Rptr. 504];
 
 People
 
 v.
 
 Boone,
 
 252 Cal.App.2d 313 [60 Cal.Rptr. 275].)
 

 The search and acquisition of the Librium are also
 
 *464
 
 legally justified based on the consent given by Miss Jermain. Petitioner refers to Miss Jermain as a “house guest” and points out she had been living with him only a few days, she did not pay rent, she did not have his consent to agree to a search of his premises. However, the hearing officer was not bound to be blind to the facts of life; this was a situation of man and woman living together in an apartment. Petitioner admitted Miss Jermain could come and go as she pleased although he was not sure whether she had a key to the apartment on the day of her arrest. He had given her the use of his automobile. Where property of a kind over which a wife normally exercises as much control as her husband is involved, it is reasonable to conclude she may consent to a search and seizure of that property in her home. The same reasoning applies to a mistress. Whether Miss Jermain had the status of mistress might be debated under the evidence. However, as a woman living in petitioner’s apartment she certainly was expected to have access to the bathroom and medicine cabinet therein and to the capsules given her by petitioner. It was entirely reasonable for the hearing officer to conclude that Miss Jermain had authority to consent to a search sufficient to disclose the capsules related to her own narcotics problem. This is not a case of a joint occupant of premises consenting to a search involving another occupant in some situation not of concern to the consenting party; nor does it involve some remote part of the premises or a portion of the premises private or personal to the other occupant. As indicated, the record is not entirely satisfactory, but it seems clearly inferrable that Miss Jermain was apprehended and arrested in connection with narcotics. She had been hospitalized for narcotic and dangerous drug addiction, was on probation for a narcotics offense and it appeared her probation officer together with the police apprehended her at petitioner’s apartment where they looked for drugs.
 

 The judgment is affirmed.
 

 McCabe, P. J., and Kerrigan, J., concurred.
 

 *
 

 Assigned by the Chairman of the Judicial Council.