APPALACHIAN POWER COMPANY, *a corp.*

*v.*

PUBLIC SERVICE COMMISSION, *et al.*

(No. 14331)

Decided April 3, 1979.

C. *Terry Owen and William H. Roberts, Public Service Commission,* for appellants.

*Love, Wise, Robinson & Woodroe, Charles R. McElwee, David M. Flannery,* for appellee.

MCGRAW, JUSTICE:

In this case we are called upon to decide if the West Virginia Open Governmental Proceedings Act, "The Sun-

shine Act,"[1] W.Va. Code, 6-9a-1 *et seq.*, has any applicability to the various proceedings of the Public Service Commission of West Virginia. We hold that the Act applies to Public Service Commission hearings when those hearings are convened and conducted by two or more commissioners. We hold that the Act does not apply to the other activities or assemblages of the Commission. We grant appellant's motion to reverse the judgment below.

In September, 1977, the appellee, APCO, filed with the Public Service Commission a tariff requesting increased rates and charges for electric service. The case was designated as P.S.C. Case No. 9091, and beginning on January 16, 1978, hearings were held to hear protestants, receive evidence and develop a record. Prior to hearings set for July 10, 1978, the company moved the Commission to suspend further hearings until such time as it was determined whether the Act applied to the Commission's proceedings in Case No. 9091. The motion was denied. Hearings were held on July 10, 11 and 12, 1978. On July 13th, pursuant to W.Va. Code, 55-13-1 *et seq.*, the company filed a declaratory judgment action in the Circuit Court of Kanawha County.

In the complaint the company contended that all assemblages of the P.S.C. held after July 10, 1978, in Case No. 9091 were subject to the Act's requirements. The company further contended the Commission's actions in Case No. 9091, including the final decision, were voidable under § 6 of the Act because the Commission had failed to promulgate rules by which notice of the time and place of all gatherings were made available in advance to the public, and had failed to prepare written minutes of all gatherings. The complaint asked that the court adjudge that all assemblages of Commissioners McDonald, Bromley and Casto held to receive evidence, hear oral argument, deliberate toward a decision, confer with staff, make a decision, or for any other purpose, were

---

[1] The Act was originally passed by the 1975 session of the Legislature and was amended by the 1978 session. The 1978 amendments became effective on June 9, 1978.

subject to the requirements of the Act. The complaint further asked that the court find that the defendants had violated the Act, and asked the court to find that actions taken in violation of the Act may be voidable.

For their answer, the Commission declared that the Act was not applicable to their activities. The parties entered into a stipulation of facts. The case was submitted on briefs, without oral argument.

On October 18, 1978, Judge Robert K. Smith issued a Memorandum of Opinion. In that memorandum the court held that the Act applied to the Commission, and any meetings of the Commissioners held on or after July 10, 1978 in connection with Case No. 9091 were in violation of the Act. On October 30, 1978, a judgment order reflecting the substance of the Memorandum of Opinion was entered. The Commission's motion for a stay of effectiveness of the order was denied. On October 31, 1978, this Court granted the Commission's petition for an appeal and stayed the order of the circuit court pending a decision in this Court. On November 3, 1978, this Court granted the Commission's motion for leave to move to reverse and modify the judgment below, and on November 21, 1978, the motion to reverse was argued and the case submitted for decision.

Appellants' brief sets forth twelve assignments of error, the sum and substance of which are that the trial court misconstrued the Act's pertinent provisions, and accordingly, was incorrect in finding that the Act applied to the P.S.C.

The sole question this case presents is: To which, if any, of the Commission's various types of assemblages does the Sunshine Act apply?

The stipulation entered into below by the parties[2] indicates that during a rate case such as the instant one,

---

[2] Pertinent portions of the stipulation are as follows:

6. Pursuant to Code § 24-1-6, the concurrent judgment of two of the commissioners of the PSC, when in session as the PSC, shall be deemed the action of the PSC.

four types of assemblages are ordinarily held. These are as the parties denominate them: (a) hearings, (b) confer-

9. The defendant PSC is a "public body" as defined by the 1975 Sunshine Act, as amended by the 1978 Amendments.

10. The defendants E. Dandridge McDonald, N. Paul Bromley and Otis D. Casto or any two of them constitute the 'governing body' of the defendant PSC, as defined by the 1975 Sunshine Act, as amended by the 1978 Amendments.

14. Transcripts of the public sessions of defendant PSC for hearing motions, evidence or oral argument, or for public conference are taken, filed and maintained as a matter of public record. The defendant PSC does not provide for the taking of any other written record or minutes of such public sessions. With respect to all other of its sessions, including, but not limited to, sessions in which it confers with its staff, deliberates toward a decision, and/or makes a decision, the defendant PSC prepares no minutes and makes no written record.

15. All sessions of defendant PSC for hearing motions, evidence or oral argument, or for public conference are open to the public. Specifically, sessions of defendant PSC to confer with its staff, deliberate toward a decision and to make a decision are not open to the public.

17. The defendant PSC requires by order publication and posting of all initial hearing dates set in proceedings coming before it.

The defendant PSC maintains, as a matter of public record, a docket book containing all initial hearing dates set by order; dates of future hearings when continued from the bench; and dates of hearings when finally set by order after being continued to a date later to be determined. Copies of all docket book entries made since the effective date of the 1978 Amendments (June 9, 1978) in Case No. 9091 including the monthly docket sheet for July, 1978, are attached hereto as Exhibit F and made a part hereof by reference.

The defendant PSC also maintains, as a matter of public record, a disposition book, which contains all dates of hearings continued from the bench to a date certain. Copies of all disposition book entries made since the effective date of the 1978 Amendments (June 9, 1978) in Case No. 9091 are attached hereto as Exhibit G and made a part hereof by reference.

The defendant PSC also maintains, for public reference in the office of the Executive Secretary, a bulletin board reflecting prospective approximately two weeks of initial hearing dates. Copies of all bulletin board postings made since the effective date of the 1978 Amendments (June 9, 1978) in Case No. 9091 are attached hereto as Exhibit H and made a part hereof by reference.

The term "hearing" as used in this paragraph 17 refers to public sessions conducted by defendant PSC or a designated hearing examiner for hearing motions, evidence or oral argument.

ences with staff, (c) deliberating on the case and, (d) making a final decision in the case.

We do not accept the parties' characterizations of the four types of assemblages. Two of the categories which purport to be separate and distinct are deliberation and making a decision. Deliberation and making a decision describe the thought process and its culmination in a decision. In the abstract these terms may be defined as separate and distinct. In reality they are not so easily compartmentalized. Deliberation and making a decision often overlap one another and are functionally indistinguishable. It may be impossible to identify some arbitrary point in a thought process at which deliberation ends and making a decision begins. The two may exist concurrently; they are not mutually exclusive; and they frequently describe the same process. Accordingly, attempts at labeling and categorization often lead not to enlightenment but only to the illusion of enlightenment, and, sometimes to obfuscation.

We find that these artificial categories and their inherent limitations are unduly restrictive of our attempts to arrive at a proper construction and application of the Act's pertinent provisions. Accordingly, we reject them.

Just as it is difficult, if not impossible to distinguish between deliberation and making a decision, similar problems arise with respect to categorizing staff consultations separately. Consultations with staff, deliberation and making a decision are steps in a *process*. For our purposes they are not separate and distinct occurrences. Consultations, deliberations and making a decision are elements in a continuum. To attempt to separate this continuum into contrived components obstructs rather than facilitates interpretation of the Act. We do distinguish between the process of making a decision which is a part of this continuum and decision as the term represents the judgment reached as the end result of the continuum.

For purposes of this opinion, we perceive the Commission's activities as follows: The hearing is a separate

category, an event complete as to itself with readily recognizable characteristics of time, place and function. Consultations, deliberation and the process of making a decision are part of a continuum leading to the articulation of a final judgment or decision and will be dealt with as such. Assemblages at which the Commissioners meet together, discuss their separate decisions reached as the end result of the continuum, concur and articulate or render a final decision or judgment are a separate category and will be considered accordingly. We denominate such assemblages as adjudicatory sessions.

The initial inquiry is which, if any, of these activities, processes or assemblages fall within the Act's definition of a meeting? Section 2(4) of the Act contains the following definition of meeting:

> 'Meeting' means the convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter, ...

We believe this language properly construed defines meeting to mean a convening of a governing body of a public body if the convening is for the purpose of making a decision or deliberating toward a decision, and if some statute or rule requires a quorum as a prerequisite to convening. We arrive at this construction based upon the belief that the dependent clause "for which a quorum is required ..." modifies the verbal phrase "the convening." The sentence thus construed indicates to the reader the particular characteristics a convening must possess to be a "meeting." Such a construction provides the clause in question with a meaningful function in the sentence, and adds significantly to the clarity of the definition as a whole. This construction is reasonable, logical and grammatically correct.

Reading W.Va. Code, 6-9a-2(4) *in pari materia* with W.Va. Code, 6-9a-5 further persuades us that the foregoing construction is the correct one. In W.Va. Code, 6-9a-5 it is directed that a governing body provide for the preparation of written minutes for all *meetings*. Those min-

utes shall include *inter alia*: the name of each member of the governing body present; all motions, proposals, resolutions, orders, ordinances and measures proposed and their disposition; and the results of all votes. The requirements of this section indicate in the clearest possible terms that *meetings* as the Act defines them will have members of the governing body present, and will involve the transaction of business. This is consistent with our construction of the Act's definition of meeting and entirely inconsistent with appellee's construction.

In appellee's construction the clause "for which a quorum is required . . ." operates to modify the words "public body." Appellee bases this construction upon a single rule of statutory construction.[3]

Notwithstanding the fact that appellee's proffered construction is supported by a convenient rule, we find it to be without merit. We find it so because the construction achieves no meaningful result, does not add to our understanding of the definition, and fails to indicate what characteristics a convening must have to be a "meeting." The use of the clause in question as a modifier of public body does not enlighten us as to the meaning of the words "public body." In this respect the construction assigns a meaningless function to the clause. The clause when so used serves no discernable purpose related to the use of the words public body in the sentence. Public body is defined elsewhere in the Act. The definition bears no relationship to and is not dependent upon a requirement of a quorum. The construction urged by appellee results in a definition of meeting encompassing

---

[3] A qualifying phrase is ordinarily confined to the last antecedent or to the words and phrases immediately preceding it; the last antecedent within the meaning of this rule has been regarded as the last word which can be made an antecedent without impairing the meaning of the sentence. 73 Am. Jur.2d *Statutes* § 230 pp. 414, 415.

It should be noted that appellee incorrectly denominates the clause in question as a phrase, thus making the application of this rule questionable and perhaps indicating the superficiality of appellee's analysis.

any coming together of a governing body whether or not that assemblage is capable of legally transacting business. Accordingly, as previously stated it is inconsistent with the requirements of W.Va. Code, 6-9a-5. We believe if the Legislature had intended to offer such a broad definition of meeting they would have done so in specific and precise language and would not have found it necessary to attach the qualifying clauses contained in the present definition, which qualifying clauses they evidently intended to have meaning. We believe the Legislature did not intend that every assemblage of a governing body was a "meeting" subject to the Act. Clearly appellee perceived the necessity to find some use for the clause other than the use we have assigned to it. This was necessary to enable the appellee to urge upon us the broad and open-ended definition of meeting; a definition that is so broad it is without meaning.

It is well recognized that numerous rules of statutory construction exist, and that a rule of statutory construction may be found to support any theory or point of view related to the construction of a particular set of words. For an enlightening discussion of the futility of relying upon the rules of statutory construction for edification in these matters, we refer the reader to Footnote 2 in Justice Neely's opinion in *Virginia Electric Power Company v. Public Service Commission of West Virginia,* ＿＿ W. Va. ＿＿, 248 S.E.2d 322 (1978).

Having arrived at what we believe to be the correct construction of the definition of "meeting" we now apply that definition to the Commission's activities as we have defined them to determine whether or not they come within the definition.

*Hearings*

The Commission holds at least eighteen different types of hearings. All of these hearings have certain common characteristics. There are notice requirements for certain types of hearings including a notice requirement relating to hearings in the type of proceeding involved

in the instant case.[4] There is no quorum requirement relating to hearings. There is, in fact, no requirement that any members of the Commission, singly or together, attend or conduct hearings, and W.Va. Code, 24-1-3 authorizes the Commission to designate certain of its employees to conduct hearings. There is no requirement of a quorum to convene a hearing. The Commissioners, *i.e.*, "the governing body," are not required to be present to convene hearings, and in this regard a hearing would not necessarily involve the convening of the governing body. For these reasons we find the definition of meeting is clearly not applicable to Commission hearings conducted by staff alone. However, consistent with the definition of "meeting", we hold that when two or more Commissioners convene and conduct a hearing, the requirements of the Act apply.[5]

*The Continuum*

In accordance with the foregoing analysis of the Commission's activities, we next consider whether the Act applies to the continuum of consultations, deliberations and the process of making a decision. This continuum is in actuality representative of the day to day operation of the Commission. Consultations, deliberations and the process of making a decision might often involve more than a single case, and in this regard indicate the impracticality of making these activities subject to the Act's requirements. Because these activities are informal occurrences in the Commission's day to day operation, there is no requirement of a quorum before these activities can take place or before there can be a "con-

---

[4] *See* Rule 22 of the Commission's Tariff Rules; read together with W.Va. Code, 24-2-4; and Rule 12(b)-2.

[5] We note that the Public Service Commission, in brief, asserts: "While the Commission has not promulgated rules specifically to comply with the 1978 Act, it is asserted that *the Commission hearing practices fully comply with the 1978 Act.*" (emphasis added). Appellant reiterated in oral arguments before this Court that the public, the press and the electronic media have full access to hearings. Surely this complies with the Act's requirements in this regard.

vening" of a consultation, etc. Conceivably one commissioner might meet with staff; certainly this would not constitute a convening of the governing body. Similarly, one commissioner might deliberate alone or engage alone in the process of making a decision, and in such instances there would be no convening of the governing body. Because a quorum is not required at any stage of this continuum and because no stage necessarily involves the convening of the governing body, we find that the definition of meeting does not encompass consultations with staff, deliberations or the process of making a decision. Accordingly, we hold that the Act does not apply to these matters.

*Adjudicatory Sessions*

We find that this type of assemblage is excepted from the Act's operation by virtue of the exception contained in the meeting definition which excepts from the Act "... any meeting for the purpose of making an adjudicatory decision in any quasi-judicial, administrative or court of claims proceeding ..."

To determine the applicability of this exception, we first determine whether the Commission's proceedings in Case No. 9091 are of a quasi-judicial nature. Appellee contends that the proceedings are legislative proceedings. Appellee's argument fails because of the failure to distinguish between the type of proceeding and the type of power exercised by the agency conducting the proceeding. Appellee's numerous citations of authority are correct inasmuch as they indicate that the power exercised by the Commission is a legislatively delegated power. This, however, is not determinative of the nature of the proceedings conducted by the Commission in a particular case. In examining the character of the proceedings in Case No. 9091, we find that they involve notice, presentation of evidence, the making of a record, examination of witnesses under oath and the exercise of subpoena power. All of these matters are characteristics of proceedings which are essentially of a judicial nature.

The early administrative law case of *Morgan v. United States*, 298 U.S. 468, 56 S. Ct. 906, 80 L. Ed. 1288 (1936), provides us with guidance in this area. The case dealt with the Secretary of Agriculture's authority to fix rates of sale for livestock. This authority was conferred by Congress and allowed the Secretary to make rates in accordance with certain standards and limitations Congress prescribed. As a prerequisite to fixing rates the Secretary had to find existing rates unjust, unreasonable or discriminatory. If such a finding was made the Secretary could then fix a just and reasonable rate. Clearly the situation involved an administrative agency exercising a legislatively delegated power.

The court found that the duty imposed by Congress carried with it certain fundamental procedural requirements; i.e., a full hearing, findings of fact, adequate evidence to support those findings, and a decision based only on material evidence on the record. The Court stated:

> A proceeding of this sort requiring the taking and weighing of evidence, determinations of fact based upon the consideration of the evidence, and the making of an order supported by such findings, has a quality resembling that of a judicial proceeding. Hence it is frequently described as a proceeding of a quasi judicial character. *Supra* at 480.

The Court found that these requirements amounted to a full hearing, and that this was true even though the evidence might be taken by an examiner and analyzed by subordinates. The Court's analysis was functional. The Court found the characteristics of the proceeding determinative, not the nature of the power exercised therein. The similarities to the Commission's proceedings are clear. The analogy is complete and definite. A functional analysis of the Commission's proceedings leads unerringly to the conclusion that they too are quasi judicial proceedings.

Other leading cases formative of administrative law stand for the proposition that though a power is legisla-

tively delegated to an administrative agency, constitutional requirements of a full hearing as a prerequisite to the exercise of that power will result in administrative proceedings of a quasi judicial nature. *Arizona Grocery Company v. Atchison, Topeka, & Santa Fe Railway Company*, 248 U.S. 370, 52 S. Ct. 183, 76 L. Ed. 348, (1932); *Shields v. Utah Idaho Central Railroad Company*, 305 U.S. 177, 59 S. Ct. 160, 83 L. Ed. 111, (1938); *St. Joseph Stockyards Company v. United States of America*, 298 U.S. 38, 56 S. Ct. 720, 80 L. Ed. 1033 (1936).

In the case of *Handlon v. Town of Belleville*, 4 N.J. 99, 71 A.2d 624 (1950), the New Jersey Supreme Court considered the actions of a town civil service commission functioning as an administrative agency holding hearings on the dismissal of a covered employee. The Court determined that such hearings' observance of the traditional safeguards against arbitrary action resulted in a quasi judicial proceeding. "The prefix 'quasi' is descriptive of the judicial faculty assigned to administrative agencies and public officers not a part of the judiciary. Whether the proceeding in essence is legislative or judicial is determined by the nature of the final act and the character of the process and operation rather than by the general character of the authority itself." *Id.* at 104, 71 A.2d 626. "The quality of the act rather than the character of the agency exercising the authority is determinative . . ." *Id.* at 105, 71 A.2d 627. "Where the administrative tribunal is under a duty to consider evidence and apply the law to the facts as found, thereby exercising a discretion or judgment judicial in nature on evidentiary facts, the function is ordinarily quasi-judicial . . ." *Id.* at 105, 71 A.2d 627.

The most basic definition of quasi judicial is judicial power exercised by an official not within the judicial branch of government. *State v. Winne*, 91 A.2d 65, 21 N.J. Super. 180. The prefix "quasi" means, *inter alia*, "as if," "as though," or "in the manner of." Most simply, a quasi judicial proceeding is a proceeding conducted in the manner of a judicial proceeding. For further abundant

authority in this regard, *see* 35A Words & Phrases, *Quasi Judicial* 463 (1963).

In the case of *Virginia Electric Power Company v. The Public Service Commission of West Virginia, supra,* this Court held in syl. pt. 1 that *W. Va. Const.* Art. III § 10 contains an implied mandate of procedural due process with regard to Commission hearings. The foregoing and a legion of similar authority leaves no doubt that the characteristics of procedural due process as they relate to hearings are those very attributes which characterize the Commission's proceedings in Case No. 9091. The conclusion is inescapable that administrative proceedings such as those of the Public Service Commission in Case No. 9091 are quasi judicial proceedings.

Having determined that the proceedings in Case No. 9091 are quasi judicial, it logically follows that any decision reached as a result of such proceedings is by definition an adjudicatory decision. Black's Law Dictionary, 4th ed. defines adjudicate as "to settle in the exercise of judicial authority. To determine finally. Synonymous with adjudge in its strictest sense." We believe that any decision which arises out of quasi judicial proceedings and is a final determination of the matters involved is an adjudicatory decision. W.Va. Code, 24-1-6 refers to the concurrent *judgment* of two commissioners. Certainly the Legislature used the word *judgment* with some precise purpose in mind. Its use is a clear indication that the final decisions of the Commission are adjudications. If the Legislature denominates final decisions in rate cases as judgments, they are certainly adjudicatory decisions.

Appellee's brief demonstrates that it is possible to gather ample countervailing authority which defines adjudicatory decision in its strictest possible sense as a decision by a member of the judicial branch arising out of a case or a controversy involving adverse parties. Based upon the whole character of the proceedings considered here and based upon the use of the word "judgment" in W.Va. Code, 24-1-6, we find the application of such a strict and narrow definition to be inappropriate.

Based upon the foregoing, we find that the adjudicatory session comes within the (a) exception of the meeting definition. We hold that the requirements of the Act are not applicable to adjudicatory sessions.[6]

We grant appellants' motion to reverse, and remand the case to the trial court for modification of that court's judgment in accordance with this opinion.[7]

*Reversed and remanded.*

---

[6] W.Va. Code, 6-9a-1 provides as follows:

The legislature hereby finds and declares that public agencies, boards, commissions, governing bodies, councils and all other public bodies in this State exist for the singular purpose of representing citizens of this State in governmental affairs, and it is, therefore, in the best interests of the people of this State for all proceedings or all public bodies to be conducted in an open and public manner. The legislature hereby further finds and declares that the citizens of this State do not yield their sovereignty to the governmental agencies which serve them. The people in delegating authority do not give their public servants the right to decide what is good for them to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments of government created by them.

The foregoing statement is without doubt laudable, and we agree wholeheartedly with the intent expressed therein. However, it is unfortunate that the actual words of the Act fail to properly implement this lofty policy. Curiously it is as if the Act and the statement of policy were written by two different individuals without communication or knowledge of each others intent or actions.

[7] H.B. 1280 was passed by the 1979 Session of the Legislature and is to become effective on March 10, 1979. The bill was signed by the Governor on March 28, 1979.

It affects a reorganization of the Public Service Commission. Among its provisions is the following contained in W.Va. Code, 24-1-7:

"Meetings of the commission during which it makes a decision or deliberates toward a decision on any matter are exempt from the requirements of article nine-a, chapter six of this code, notwithstanding any other provisions of this code to the contrary.

The relationship or effect, if any, of this enactment to this opinion and the proceedings upon which it is founded is a matter for future judicial determination if and when it arises in the proper context. At this time we do not find it to be germane to this case.