[Civ. No. 18230. Third Dist. Jan. 15, 1980.]

PHILLIP KOLNICK, Plaintiff and Appellant, v.
BOARD OF MEDICAL QUALITY ASSURANCE,
Defendant and Respondent.

82

---

---

COUNSEL

Lynn Hubbard III for Plaintiff and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, and Karl S. Engeman, Deputy Attorney General, for Defendant and Respondent.

---

OPINION

**PARAS, J.**—Plaintiff appeals from a superior court judgment denying his petition for a writ of mandamus to restore his license to practice medicine. Testimony at the hearing showed that plaintiff wrote five prescriptions for an undercover police officer. He asked the officer to supply a false name for one of the forms (for APC) and omitted the date on another, giving the officer the pen he used so that the ink would match when the date was later added. He also asked the officer, who said he was leaving the area, to have one of the prescriptions filled immediately so that he wouldn't "get in trouble" if the prescriptions were discovered. Two of plaintiff's patients testified that they had been given injections by his employee Angelene May, who admittedly was not licensed in any health care capacity by the State of California.

Defendant Board of Medical Quality Assurance (Board) revoked plaintiff's license after it found first, that he prescribed controlled substances (APC with codeine and dexedrine) for a person he was not treating and had not examined and second, that he ordered an unlicensed employee to administer injections to his patients. The Board's findings were made after a hearing conducted by an administrative law judge before a five-member panel. The court found that the weight of the evidence supported the Board's conclusion that cause was established for discipline under Business and Professions Code sections 2392,

2391.5, 2399.5, and 2361[1] and that the Board did not abuse its discretion by revoking plaintiff's license.

Plaintiff claims we must reverse because his conduct was not unprofessional as defined by the code sections, police investigators acted illegally during the investigation, and the penalty of revocation is too severe. We affirm the judgment.

■ Plaintiff contends that since section 2727, subdivision (e), conditionally exempts a person carrying out the medical orders of a licensed physician from regulations governing nursing, he could not have violated the prohibition against "aiding or abetting of any unlicensed person to practice any system or mode of treating the sick or afflicted" in section 2392. He misapprehends the issue. When a doctor directs an unlicensed person to perform a medical act, the question is not whether the unlicensed person may be disciplined for the act but whether the doctor's conduct is unprofessional under section 2392. (*Newhouse v. Bd. of Osteopathic Examiners* (1958) 159 Cal.App.2d 728, 733 [324 P.2d 687].) Since the giving of injections is clearly a system or mode of treating the sick or afflicted within the meaning of section 2392, and since the testimony was uncontroverted that plaintiff directed an unlicensed person to give injections, we cannot fault the judgment on this ground.

■ Plaintiff next contends that because there was no evidence presented at the administrative hearing as to what a "good faith prior examination" would be in the circumstances of this case, no violation of section 2399.5[2] was established. We cannot agree. The testimony of the police undercover officer for whom plaintiff wrote five prescriptions in the course of two visits on two consecutive days was that plaintiff never examined him at all, and no patient record (which would show examination results) for him was found in the doctor's files when they were later searched (neither the Board nor the superior court was required to believe plaintiff's contrary testimony or his theory of stolen records). Since there was no examination, criteria for a "good faith" examination were irrelevant and constituted a false issue as to which no evidence was necessary.

---

[1]All statutory references henceforth are to the Business and Professions Code unless otherwise indicated.

[2]The relevant portion of section 2399.5 defines unprofessional conduct as "Prescribing, dispensing or furnishing dangerous drugs as defined in Section 4211 of the

■ We also find plaintiff's contention that no credible evidence of violation of section 2361[3] was introduced at the administrative hearing unpersuasive. That section mandates Board discipline of licensees guilty of unprofessional conduct; and as it clearly spells out, its subdivisions illustrate but do not limit the acts which constitutes such conduct. As noted, plaintiff did violate sections 2392 and 2399.5, both of which further define unprofessional conduct.

■ Plaintiff argues that the testimony of the officer for whom he wrote the prescriptions should have been suppressed because the officer made an unauthorized and false statement when he jokingly told plaintiff that he needed APC with codeine because he got headaches when he gambled excessively. We find no illegal conduct by the officer upon which plaintiff could rationally ground such an argument. (See *Elder* v. *Bd. of Medical Examiners* (1966) 241 Cal.App.2d 246, 261 [50 Cal.Rptr. 304]; *Pierce* v. *Board of Nursing etc. Registration* (1967) 255 Cal.App.2d 463, 467 [63 Cal.Rptr. 107].) It is not illegal for duly authorized peace officers investigating Health and Safety Code violations to make verbal misrepresentations to a physician. (Health & Saf. Code, § 11367; *People* v. *Nunn* (1956) 46 Cal.2d 460, 470 [296 P.2d 813].) The officer here was a long-time member of a police department, and was assisting the Sheriff's Department of Placer County in a drug investigation. The Board found plaintiff's violations of the Business and Professions Code also involved Health and Safety Code sections 11154, 11157, 11172, and 11190. We do not read *People* v. *Nunn, supra,* as plaintiff does, to require an officer to obtain specific authorization from a superior before stating a pretext for obtaining prescriptions for controlled substances.

Business and Professions Code without a good faith prior examination and medical indication therefor."

[3]Section 2361 reads: "The Division of Medical Quality shall take action against any holder of a certificate, who is guilty of unprofessional conduct which has been brought to its attention, or whose certificate has been procured by fraud or misrepresentation or issued by mistake.

"Unprofessional conduct includes, but is not limited to, the following:

"(a) Violating or attempting to violate, directly or indirectly, or assisting in or abetting the violation of, or conspiring to violate, any provision or term of this chapter.

"(b) Gross negligence.

"(c) Repeated similar negligent acts.

"(d) Incompetence.

"(e) The commission of any act involving dishonesty or corruption, whether the act is committed in the course of the individual's activities as a certificate holder, or otherwise, or whether the act is a felony or a misdemeanor.

"(f) Any action or conduct which would have warranted the denial of the certificate."

Nor do we find error in the rejection of plaintiff's claim of entrapment. ■ Entrapment does not occur if the accused harbors a preexisting criminal intent and commits the crime because of solicitation by a decoy. (*Patty* v. *Board of Medical Examiners* (1973) 9 Cal.3d 356, 369 [107 Cal.Rptr. 473, 508 P.2d 1121, 61 A.L.R.3d 342].)[4] The record contains sufficient evidence from which the trial court could properly infer that plaintiff entertained a preexisting intent to prescribe controlled substances without legitimate medical reason. The hearing testimony showed that plaintiff readily complied with the officer's request for APC with codeine and that he sought to avoid detection by the authorities through the utilization of a variety of methods, including the use of a false name and a false date and by giving the officer his pen so the date on one prescription could be filled in at a later date by the officer himself. These facts support the trial court's rejection of the entrapment defense.

■ Plaintiff contends he was entitled to the exclusion of the undercover officer's testimony at the hearing because audio tapes connected to a faulty transmitter attached to Lloyd Ebert were recycled and could not be produced. The testimony of the officer in charge of receiving and recording transmissions from Ebert's transmitter was that, with the exception of the words "Hello, Doc" on one tape, only static was recorded. True it is that an investigatory agency has an obligation to preserve material evidence and that the requested sanction may be appropriate where such evidence is destroyed (*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361]); but the failure to impose sanctions for nonpreservation of blank or incomprehensible audio tapes is not error, since such tapes cannot possibly be relevant on the issue of guilt. (*People* v. *Perez* (1978) 83 Cal.App.3d 718, 730-732 [148 Cal.Rptr. 90].) The contention fails.

Plaintiff contends inferentially that the trial court's implied findings on the evidence presented to the Board are unsupported. The record shows otherwise.

■ Finally, plaintiff contends the Board abused its discretion by revoking his license, and a less severe penalty should be imposed. We reject this contention too. The propriety of a penalty imposed by an administrative agency is a matter vested in the discretion of the agency

---

[4]Because the judgment in this case antedates the finality of *People* v. *Barraza* (1979) 23 Cal.3d 675 [153 Cal.Rptr. 459, 591 P.2d 947], the applicable test of entrapment is the origin of intent to commit a crime. (23 Cal.3d at p. 691, fn. 5.)

and may not be disturbed unless there has been a manifest abuse of discretion. (*Cadilla* v. *Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 966 [103 Cal.Rptr. 455].) There was no such abuse.

The judgment is affirmed and the stay heretofore issued dissolved.

Puglia, P. J., and Reynoso, J., concurred.