296 S.E.2d 887

**APPALACHIAN POWER COMPANY, a corp.**

v.

**PUBLIC SERVICE COMMISSION OF W.VA.**

No. 15423.

Supreme Court of Appeals of West Virginia.

May 28, 1982.

Charles McElwee, Love, Wise, Robinson & Woodroe, Charleston, for petitioner.

William H. Roberts, Legal Div., Public Service Com'n, Charleston, for respondent.

David B. Frost, C & P Telephone Co., Charleston, amicus curiae.

MILLER, Chief Justice:

This is an appeal from a $5,000 contempt fine imposed by the Public Service Commission. The initial proceeding arose, when the Public Service Commission (Commission) served a written notice upon Appalachian Power Company (Appalachian) stating that it had violated the Commission's Rule 4.08(1)(a) relating to termination of utility services to residential customers during the winter months. Appalachian allegedly had wrongfully terminated electrical service to a John Barnette. In its notice the Commission cited its powers contained in W.Va.Code, 24-4-3 [1] and 24-4-5.[2] A hearing date was set in the notice.

After an evidentiary hearing was completed, the Commission issued a rather detailed order stating its findings of facts and rulings on the legal points argued by the parties. From this order it appears that the Commission based its formal action only on its contempt power contained in W.Va.Code, 24-4-5, in assessing the $5,000 fine against Appalachian. The Commission concluded that its contempt power did not violate the separation of powers doctrine nor our general case law in the contempt field.[3]

Because we believe that the separation of powers point is controlling, we resolve the case on this issue.

The doctrine of separation of powers is expressed in Section 1 of Article V of the West Virginia Constitution.[4] There is no

1. W.Va.Code, 24-4-3, contains these provisions: "If any public utility or other person shall fail to refuse to comply with the order of the commission under sections three, seven or nine [§§ 24-2-3, 24-2-7 or 24-2-9] respectively of article two, such public utility or other person shall, in addition to the other penalties provided for in this chapter, be subject to a fine not to exceed five thousand dollars."

2. W.Va.Code, 24-4-5, provides: "Any person or public utility who shall violate any of the orders or findings of the commission shall be guilty of contempt, and the commission shall have the same power to punish therefor as is now conferred on the circuit court, with the right of appeal in all cases to the supreme court of appeals."

3. The pertinent portion of the Public Service Commission's June 18, 1981 order is: "We reject Appalachian's argument with respect to its challenge that delegation of contempt powers to the Commission violates the judiciary and separation of powers provisions of the State Constitution. The law is well settled that the Legislature constitutionally delegated quasijudicial powers to the Commission. *Village of Bridgeport v. Public Service Commission*, 125 W.Va. 342, 24 S.E.2d 285 (1943). *See also Appalachian Power Company v. Public Service Commission*, 162 W.Va. 839, 253 S.E.2d 377, 384-385 (1979)." Upon a petition for rehearing and reargument, the Commission adopted this order as final on September 25, 1981.

4. Section 1 of Article V provides: "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature."

counterpart in the United States Constitution. Consequently, the federal doctrine of separation of powers has developed not from one single provision in the United States Constitution, but as a result of the constitutional language separating and vesting legislative, executive and judicial power in the three departments of government.· *National Mutual Insurance Co. v. Tidewater Transfer Co. Inc.,* 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949).

The doctrine of separation of powers is not without its complexity.[5] We need not however explore all of the ramifications of this doctrine since the narrow question before us is whether W.Va.Code, 24–4–5, which confers general power of contempt to the Commission violates the doctrine. We believe it does.

█ We do not quarrel with the proposition advanced by the Commission that in the course of its administrative work it exercises a quasi-judicial power, a point that was recently made in *Appalachian Power Co. v. Public Service Commission,* 162 W.Va. 839, 253 S.E.2d 377, 384–385 (1979). We recognize that the Legislature may create an administrative agency and give it quasi-judicial powers to conduct hearings and make findings of fact without violating the separation of powers doctrine. As early as *Wheeling Bridge T. Ry. Co. v. Paull,* 39 W.Va. 142, 19 S.E. 551 (1894), we recognized that from a practical standpoint, it was often impossible to maintain a complete separation between the three branches of government. One of the best expressions of this thought is found in *Chapman v. Huntington W.Va. Housing Authority,* 121 W.Va. 319, 336, 3 S.E.2d 502, 510 (1939):

> "The separation-of-power rule, as expressed in the West Virginia Constitution, however, is not adamant. From

time to time, courts have construed it as each case arises. They, Judge Hatcher suggests in the *Hodges* case [110 W.Va. 649, 159 S.E. 836], 'have not drawn "abstract analytical lines of separation" (37 Harv.L.Rev., 1014) between the departments, and that there is some overlapping of judicial and administrative duties.' The same is true of the legislative delegation of powers to administrative bodies. Necessarily, in order to make government workable and economical, it must lend itself to practical considerations. Thus we find in practice the three departments of our government, both state and federal, are mutually dependent upon, and support, each other. *Wheeling Bridge, etc., [T.] R[y]. Co. v. Paull, supra,* 144 of 39 W.Va. *In State ex rel Hall v. County Court of Monongalia County,* 82 W.Va. 564, 572, 96 S.E. 966, 969, Judge Lynch said: 'No one department can fully and completely fulfill or discharge the duties allotted to it without at least in part exercising some function belonging to one or both of the others.' "

█ Thus, we have recognized the need for some flexibility in interpreting the separation of powers doctrine in order to meet the realities of modern day government and particularly the proliferation of administrative agencies. We have not however hesitated to utilize the doctrine where we felt there was a direct and fundamental encroachment by one branch of government into the traditional powers of another branch of government. *E.g., State ex rel. Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622 (1981); *State ex rel. State Building Commission v. Bailey,* 151 W.Va. 79, 150 S.E.2d 449 (1966); *West Virginia State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959); *State v. Huber,* 129 W.Va. 198, 40 S.E.2d 11, 168 A.L.R. 808

---

5. A statement of the historical development of the separation of powers doctrine and an illustration of some of its ramifications as it relates to due process is afforded by two articles by Dean Strong entitled, *Judicial Review: A Tri-Dimensional Concept of Administrative-Constitutional Law,* 69 W.V.L.Rev. 111 and 249 (1967). Dean Strong pays tribute to an earlier article by Kenneth Davis, *Judicial Review of Administra-*tive *Action in West Virginia—A Study in Separation of Powers,* 44 W.V.L.Q. 270 (1938), which contains an analysis of our earlier cases dealing with the separation of powers doctrine. A more formidable exposition of the doctrine is presented by Abrahams & Snowden, *Separation of Powers and Administrative Crimes: A Study of Irreconcilables,* 1976 Southern Illinois L.J. 1.

(1946). In *West Virginia State Bar, supra,* Judge Haymond writing for an unanimous court postulated that the separation of powers doctrine would preclude the Legislature from delegating to an administrative agency the right to determine who could practice law before the agency. He stated, "If the statute attempted to authorize the commissioner to promulgate a rule of that character such provision of the statute would be void as a legislative encroachment upon the inherent power of the judicial department of the government." 144 W.Va. at 535, 109 S.E.2d at 439.

■ We have not had an occasion to specifically determine whether a direct statutory grant by the Legislature of contempt power to an administrative agency violates the separation of powers doctrine and other courts are not entirely harmonious on this point. The Commission rejected Appalachian's argument that *Interstate Commerce Commission v. Brimson,* 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1037 (1894) was controlling. In *Brimson* the Supreme Court indicated that a delegation of contempt power could not be made to an administrative agency. While it is true that the statement in *Brimson* was only dictum,[6] nevertheless, on the federal level it has been rather uniformly followed. *E.g., City of Chicago v. Federal Power Commission,* 385 F.2d 629 (D.C.Cir.1967) *cert. denied, Public Service Commission of Wisconsin v. Federal Power Commission,* 390 U.S. 945, 88 S.Ct. 1028, 19 L.Ed.2d 1133; *Shasta Minerals & Chemical Co. v. SEC,* 328 F.2d 285, 286 (10th Cir.1964).[7] State courts which have ad-

dressed the problem are not entirely in accord. In the absence of any constitutional provision giving contempt power to an agency, some courts which have considered the question in the separation of powers context have concluded that a direct contempt power cannot be delegated to an administrative agency. *E.g., People v. Swena,* 88 Colo. 337, 296 P. 271 (1931); *Langenberg v. Decker,* 131 Ind. 471, 31 N.E. 190 (1892); *Roberts v. Hackney,* 109 Ky. 265, 58 S.W. 810 (1900); *Wright v. Plaza Ford,* 164 N.J.Super. 203, 395 A.2d 1259 (1978); *Haas v. Jennings,* 120 Ohio St. 370, 166 N.E. 357 (1929). Others have concluded that the contempt power is delegable. *In re Clark,* 65 Conn. 17, 31 A. 522 (1894); *Dogge v. State,* 21 Neb. 272, 31 N.W. 929 (1887); *Vogel v. Corporation Comm'n,* 190 Okl. 156, 121 P.2d 586 (1942); *State ex rel. Morton v. Meyers,* 171 La. 313, 131 So. 31 (1930). One of the best discussions of this point is contained in *Wright, supra* at 1206, where the Court utilized this practical statement from Albertsworth, *Administrative Contempt Powers: A Problem in Technique,* 25 A.B. A.J. 954 (1939):

> "The petty abuses which might result from an incompetent personnel found in the lower officials of government would clearly militate against blanket conference of such wide powers of contempt over the affairs of persons and corporations subject to the veritable host of our present-day administrative agencies. [At 957–58]."

**6.** In *Brimson* the Interstate Commerce Commission had issued subpoenas and when they were ignored, it sought assistance from the courts by way of contempt as authorized by the Interstate Commerce Act. Thus, the contempt was not directly exercised by the Interstate Commerce Commission but through the Court. The Supreme Court's remark as to a direct grant of contempt power was rather brief:

> "The inquiry whether a witness before the commission is bound to answer a particular question propounded to him, or to produce books, papers, etc., in his possession and called for by that body, is one that cannot be committed to a subordinate administrative or executive tribunal for final determination. Such a body could not, under our system of

government, and consistently with due process of law, be invested with authority to compel obedience to its orders by a judgment of fine or imprisonment." 154 U.S. 485, 14 S.Ct. 1136, 38 L.Ed. 1060.

**7.** One commentator summarizes the situation as follows:

> "Despite criticism and modern theories of the separation of powers doctrine, Congress and the courts have accepted the *Brimson* dictum and no contempt or enforcement power has ever been granted federal agencies." Williams, *Authority of Federal Agencies to Impose Discovery Sanctions: The FTC—A Case in Point,* 65 Georgetown L.J. 739, 753 (1977).

We do not mean to suggest that all administrative personnel are incompetent. It is more a question of their lack of legal training coupled with the broad range of subjects presented to them that preclude the delegation of a general contempt power. Certainly, *Wright, supra,* illustrates one aspect of the problem. There an attorney representing an injured claimant was cited for three instances of contempt by a workmen's compensation hearing examiner when the attorney persisted in referring to other unreported compensation cases to justify his fee in the present case. He was fined $50.00 and one-day in jail for each of the three contempts.

The broad power of contempt as conferred by W.Va.Code, 24–4–5, which is "the same power to punish therefor as is now conferred in the circuit court," would encompass the failure to respond to subpoenas [8] as well as violations of the Commission's rules and orders, some of which may be subject to challenges as being void. Furthermore, as *Wright, supra,* indicates, parties and their attorneys appearing before the agency could be subject to contempt for such conduct as the agency might feel was contemptuous.

We conclude that the broad delegation of contempt power as given by W.Va.Code, 24–4–5, is prohibited by the separation of powers provision in our State Constitution.

The Commission rejected the *Brimson* argument as previously set forth by stating:

"Recent case law in West Virginia expresses a trend in court decisions which is opposite that expressed in the outdated *Brimson* case, and indicates that the delegation of criminal contempt powers to the Commission violates neither the trial of crimes by jury provision of the State Constitution, nor the due process clauses of the State and Federal Constitutions."

The Commission cited several of our recent contempt cases and suggested they would uphold the delegation of contempt power. *E.g., Champ v. McGhee,* 165 W.Va. 567, 270 S.E.2d 445 (1980); *Hendershot v. Hendershot,* 164 W.Va. 190, 263 S.E.2d 90 (1980); *Floyd v. Watson,* 163 W.Va. 65, 254 S.E.2d 687 (1979); *Eastern Associated Coal Corp. v. Doe,* 159 W.Va. 200, 220 S.E.2d 672 (1975). These cases are however distinguishable because they deal exclusively with the contempt power of circuit courts and have nothing to do with administrative contempt powers.

In closing we would note that even in the absence of a direct contempt power, the Commission is not without statutory authority to enforce its rules and regulations. Under W.Va.Code, 24–4–3,[9] it has the power to impose a civil penalty for the refusal to comply with rules or orders entered under W.Va.Code, 24–2–3, 24–2–7 or 24–2–9. Most courts have concluded that the delegation of the power to impose a civil penalty to an administrative agency does not violate the separation of powers doctrine. *E.g., Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938); *Oceanic Steam Navigation Company v. Stranahan,* 214 U.S. 320, 29 S.Ct. 671, 53 L.Ed. 1013 (1909); *Kolnick v. Director, Board of Medical Quality Assurance,* 101 Cal. App.3d 80, 161 Cal.Rptr. 289 (1980); *City of Waukegan v. Pollution Control Board,* 57 Ill.2d 170, 311 N.E.2d 146 (1974); *Number Three Lounge, Inc. v. Alcoholic Beverage Control Commission,* 7 Mass.App. 301, 387 N.E.2d 181 (1979); *In the Matter of Haugen,* 278 N.W.2d 75 (Minn.1979); *Jackson v. Concord County,* 54 N.J. 113, 253 A.2d 793 (1969); *Dickinson v. Davis,* 277 Or. 665, 561 P.2d 1019 (1977); *Wycoff Co. v. Public Service Commission,* 13 Utah 2d 123, 369 P.2d 283 (1963); *Rody v. Hollis,* 81 Wash.2d 88, 500 P.2d 97 (1972); *General Drivers & Helpers Union Local 662 v. Wisconsin Employment Relations*

8. The traditional method of enforcing administrative agency subpoenas is for the agency to be empowered to apply to the courts if there is a refusal to respond to the subpoena. *Interstate Commerce Commission, supra; Wright, supra;* Sherwood, *The Enforcement of Administrative Subpoenas,* 44 Col.L.Rev. 531 (1944); Note, *Use*

*of Contempt Power to Enforce Subpoenas and Orders of Administrative Agencies,* 71 Har.L. Rev. 1541 (1950). The Public Service Commission has such authority under W.Va.Code, 24–2–10.

9. *See* note 1, *supra.*

*Board,* 21 Wis.2d 242, 124 N.W.2d 123 (1963).

In *State Human Rights Commission v. Pauley,* 158 W.Va. 495, 212 S.E.2d 77, 79, 80 (1975), we addressed the question of whether the separation of powers doctrine precluded the Human Rights Commission from awarding monetary damages to a victim of racial discrimination and concluded:

"As a preliminary consideration, in relation to the question of whether an administrative agency has the power to award damages to a victim of unlawful discrimination, we quote with approval the expression of the New Jersey Supreme Court, as follows: 'Initially we may say that, at this advanced date in the development of administrative law, we see no constitutional objection to legislative authorization to an administrative agency to award, as incidental relief in connection with a subject delegable to it, money damages, ultimate judicial review thereof being available.' *Jackson v. Concord Company,* 54 N.J. 113, 253 A.2d 793 (1969)."

Because the delegation of contempt power to the Commission violates the separation of powers doctrine found in Section 1 of Article V of the West Virginia Constitution, the Commission had no authority to impose a contempt order on Appalachian and its order must, therefore, be reversed.

Reversed.