BILL LOCKYER Attorney General ANTHONY S. DA VIGO Deputy Attorney General
THE BOARD OF CHIROPRACTIC EXAMINERS has requested an opinion on the following question:
Does Business and Professions Code section 650
prohibit chiropractors from participating in an Internet marketing plan in which they agree to promote the naturopathic products of an Internet company and to refer their patients to the company's website in exchange for fees equaling 20 percent of the price of the products purchased by their patients from the company?
 CONCLUSION
Business and Professions Code section 650 prohibits chiropractors from participating in an Internet marketing plan in which they agree to promote the naturopathic products of an Internet company and to refer their patients to the company's website in exchange for fees equaling 20 percent of the price of the products purchased by their patients from the company.
 ANALYSIS
We are advised that an Internet distributor of naturopathic products proposes to enter into agreements with chiropractors in this state whereby the chiropractors would receive fees of 20 percent of the price of the products purchased by their patients from the company's website. We are asked whether the proposed program would be prohibited under the provisions of section 650 of the Business and Professions Code.[1] We conclude that the program would violate the statute.
Section 650 states in part:
 ". . . [T]he offer, delivery, receipt, or acceptance by any person licensed under this division of any rebate, refund, commission, preference, patronage dividend, discount, or other consideration . . . as . . . compensation or inducement for referring patients . . . to any person . . . is unlawful."
The threshold issue to be resolved is whether a chiropractor is a "person licensed under this division" as specified in section 650. The reference to "this division" is to Division 2, containing sections500-4999.9 dealing with the healing arts. Physicians, dentists, nurses, and other health professionals are licensed under the terms of Division 2.
Chiropractors, however, are not licensed under any statute contained in Division 2 (or any other division) of the Business and Professions Code. As stated in section 1000:
 "The law governing practitioners of chiropractic is found in an initiative act entitled `An act prescribing the terms upon which licenses may be issued to practitioners of chiropractic, creating the State Board of Chiropractic Examiners and declaring its powers and duties, prescribing penalties for violation hereof, and repealing all acts and parts of acts inconsistent herewith,' adopted by the electors November 7, 1922."
The Chiropractic Act ("Act") is the law under which chiropractors are licensed, and it is not part of the Business and Professions Code. The Act may be found in Appendix I of Deering's Annotated Business and Professions Code and after section 1000 of West's Annotated Business and Professions Code, where it is preceded by the following statement:
 "The Chiropractic Act, an initiative measure approved by the electors November 7, 1922, while not included in the Business and Professions Code by the Legislature, is set out herein as sections 1000-1 to 1000-19 for convenient reference in accordance with the recommendation made by the California Code Commission in its final report, dated September 1, 1953, page 8, reading as follows:
 "`Initiative Acts. These acts cannot be codified by the Legislature because of the constitutional limitations on the powers of the Legislature with reference to them. The commission recommends to the publishers of the codes that the initiative act be published as an appendix to the appropriate code, rather than as a separate volume.'"
In examining the language of section 650, we apply well recognized rules of statutory interpretation. "When construing a statute, we must `ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (Wilcox v. Birtwhistle (1999) 21 Cal.4th 973, 977.) "`Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and common-sense meaning. [Citations.]' [Citation.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 633.) "If the language is clear and unambiguous, there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature. . . ." (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735.)
Here, the language of section 650 is clear and unambiguous. By its own terms section 650 is inapplicable to chiropractors since they are not licensed under Division 2 of the Business and Professions Code, but rather under the Act's provisions (see Act, §§ 4, 10) and regulations (Cal. Code Regs., tit., 16, §§ 16:301-16:390.6) adopted by the State Board of Chiropractic Examiners ("Board") as authorized by the Act (see Act, § 4, subd. (b) [the Board shall have power to adopt "such rules and regulations as the board may deem proper and necessary for the performance of its work, the effective enforcement and administration of this act, the establishment of educational requirements for license renewal, and the protection of the public"]).
If section 650 does not apply to chiropractors under its own terms, may it apply by reference to the Act, the implementing regulations of the Board,[2] or by some other means? Of particular significance here is section 13 of the Act, which provides:
 "Chiropractic licentiates shall observe and be subject to all state and municipal regulations relating to all matters pertaining to the public health, and shall sign death certificates and make reports as required by law to the proper authorities, and such reports shall be accepted by the officers of the departments to which the same are made."
Does section 650 represent a state regulation "pertaining to the public health" for purposes of section 13 of the Act? In 82 Ops.Cal.Atty.Gen. 1, 4 (1999), we observed that the Legislature enacted section 650 to protect the public from excessive health care costs (Mason v. Hosta (1984) 152 Cal.App.3d 980, 986), referrals based on considerations other than the best interests of the patients (Magan Medical Clinic v. Cal. State Bd. of Medical Examiners (1967) 249 Cal.App.2d 124, 132; 68 Ops.Cal.Atty.Gen. 28, 31 (1985)), deceit and fraud (63 Ops.Cal.Atty.Gen. 89, 91 (1980)), and payment to a licensee where professional services have not been rendered (65 Ops.Cal.Atty.Gen. 252, 253 (1982)). In Beck v. American Health Group Internat., Inc. (1989) 211 Cal.App.3d 1555, 1564, the court noted:
 ". . . The evil to be proscribed by section 650 `. . . is not just the payment for the referral, but also any relationship where the referral may be induced by considerations other than the best interests of the patients. . . .' (63 Ops.Cal.Atty.Gen. 89, 92 (1980), fn. omitted.)"
We recognize that section 650 has a major economic purpose — to prevent fraud and excessive health care costs. Moreover, section 650 is not the typical public health regulation that would be applicable generally, such as regarding the containment of contagious diseases (see Derrick v. Ontario Community Hospital (1975) 47 Cal.App.3d 145), disposal of hazardous waste materials (see IT Corp. v. Solano County Bd. of Supervisors (1991) 1 Cal.4th 81), prescription of dangerous drugs (see Kolnick v. Board of Medical Quality Assurance (1980) 101 Cal.App.3d 80), or sale of drug paraphernalia (see AB Cattle Co. v. City of Escondido (1987) 192 Cal.App.3d 1032). Instead, as we have found, section 650 is inapplicable to chiropractors under its own terms.
Nevertheless, we interpret section 13 of the Act to serve its purpose of protecting the public health by finding that chiropractors must follow the provisions of section 650. Section650 not only has an economic purpose but pertains to the public health in a significant way by requiring referrals to be made only in furtherance of the best interests of the patients. The statute constitutes a state regulation relating to an important aspect of the public health. Since chiropractors "shall observe and be subject to all state and municipal regulations relating to all matters pertaining to the public health" (Act, § 13, italics added), they must observe the prohibition of section 650.
Finally, we find no inconsistency between the language of section 13 of the Act and the statutory purposes of section 650, and thus we may construe them together. (See People v. La Barre (1924)193 Cal. 388, 392.) In an analogous situation, the Supreme Court pointed out in Freedland v. Greco (1955) 45 Cal.2d 462, 467-468:
 "Taking into consideration the policies and purposes of the act, the applicable rule of statutory construction is that the purpose sought to be achieved and evils to be eliminated have an important place in ascertaining the legislative intent [citation]. Statutes should be interpreted to promote rather than defeat the legislative purpose and policy [citation]. . . . And, `That construction of a statute should be avoided which affords an opportunity to evade the act, and that construction is favored which would defeat subterfuges, expediencies, or evasions employed to continue the mischief sought to be remedied by the statute, or to defeat compliance with its terms, or any attempt to accomplish by indirection what the statute forbids.' [Citations.]"
These principles of construction are as applicable to initiative acts adopted by the voters as to statutes enacted by the Legislature. (See DaFonte v. Up-Right, Inc. (1992) 2 Cal.4th 593, 501; Lesher Communications, Inc. v. City of Walnut Creek (1990) 52 Cal.3d 531, 540; Legislature v. Deukemejian (1983) 34 Cal.3d 658, 675.)
Having determined that section 650's prohibition is applicable to chiropractors, we have little difficulty in concluding that the Internet marketing proposal here would violate the terms of the statute. Both the plain language and the purposes of section650, as noted above, would be violated by implementing the marketing plan. It is manifest that chiropractors who would agree to promote and refer their patients to a commercial distributor of naturopathic products in exchange for fees of 20 percent of the price of the products purchased by their patients "may be induced [to make the referral] by considerations other than the best interests of the patients." (See 82 Ops.Cal.Atty.Gen. 1, 4 (1999); 79 Ops.Cal.Atty.Gen. 225, 231-232 (1996).) It is also evident that the promotion, the profits from which would be determined by and directly tied to the quantity of products purchased by the patients, may result in excessive health care costs. (See 76 Ops.Cal.Atty.Gen. 204, 206 (1993); 53 Ops.Cal.Atty.Gen. 117, 118 (1970).) Such additional costs may arise simply as a function of providing referral fees to the participating practitioners.[3]
It is concluded, therefore, that section 650 prohibits chiropractors from participating in an Internet marketing plan in which they agree to promote the naturopathic products of an Internet company and to refer their patients to the company's website in exchange for fees equaling 20 percent of the price of the products purchased by their patients from the company.
[1] Unidentified section references hereafter are to the Business and Professions Code.
[2] By regulation the Board has referred to a state statute in describing unprofessional conduct for which it will take action (Cal. Code Regs., tit. 16, § 16:317, subd. (p) [unprofessional conduct includes "The use of advertising relating to chiropractic which violates section 17500 of the Business and Professions Code"]), but it has not expressly incorporated the provisions of section650 into its administrative regulations. Rather, it has incorporated the basic substance of section 650 in its definition of unprofessional conduct (Cal. Code Regs., tit. 16, §16:317, subd. (t) [unprofessional conduct includes "The offering, delivering, receiving or accepting of any rebate, refund, commission, preference, patronage, dividend, discount, or other consideration as compensation or inducement for referring patients to any person"]).
[3] In contrast, section 650 would not be applicable where the chiropractor was the owner of the naturopathic products and thus the vendor of the products to the patients. Section650 prohibits only the "referring" of patients.