IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0383
_____

**FILED**

February 21, 2014
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE: B.C.

_____

Appeal from the Circuit Court of Ohio County
The Honorable David J. Sims, Judge
Civil Action No. 12-CJA-20

REVERSED AND REMANDED

_____

Submitted: January 22, 2014
Filed: February 21, 2014

Teresa C. Toriseva, Esq.                    Patrick Morrisey
Toriseva Law                                Attorney General
Wheeling, West Virginia                     Lee A. Niezgoda
Counsel for the Petitioner                  Assistant Attorney General
                                            White Hall, West Virginia
                                            Counsel for the W.Va. Dept. of Health and
Joseph J. Moses, Esq.                       Human Resources
Wheeling, West Virginia
Guardian ad litem

JUSTICE KETCHUM delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.    "Before the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied.  First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings.  Second, the two actions must involve either the same parties or persons in privity with those same parties.  Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action."  Syllabus Point 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997).

2.    "Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action."  Syllabus Point 1, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

3.    "Though constitutionally protected, the right of the natural parent to the custody of minor children is not absolute and it may be limited or terminated by the State, as *parens patriae*, if the parent is proved unfit to be entrusted with child care."  Syllabus Point 5, *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973).

i

4.  Under *W.Va. Code* § 48-27-305 [2001], a petition for a domestic violence protective order may be pursued by three classes of people: (1) a person individually seeking relief from domestic violence; (2) an adult person seeking relief from domestic violence on behalf of a family or household member, such as a minor child; or (3) a person who is being abused, threatened or harassed because they witnessed or reported domestic violence.

5.  While a civil abuse and neglect action pursuant to *W.Va. Code* § 49-6-1 [2005] may be initiated by either the West Virginia Department of Health and Human Resources or "a reputable person," the action is pursued solely on behalf of the State of West Virginia in its role as *parens patriae*.

6.  A petition for a domestic violence protective order under *W.Va. Code* § 48-27-101, *et seq.*, and a petition alleging abuse and/or neglect under *W.Va. Code* § 49-6-1, *et seq.*, may be filed upon the same facts without consequences under the doctrine of *res judicata* or the doctrine of collateral estoppel.

Justice Ketchum:

In this appeal from the Circuit Court of Ohio County, the parties dispute a circuit court order dismissing a petition which alleged that a parent abused and/or neglected a child. We are asked to determine whether one parent may seek a domestic violence protective order against the other parent of the child, and then later file a petition to initiate an abuse and neglect proceeding for the child in circuit court regarding the same conduct. In its order dismissing the petition, the circuit court concluded that an abuse and neglect proceeding filed after the conclusion of a domestic violence proceeding would be barred by principles of *res judicata* and collateral estoppel.

As set forth below, we reverse the circuit court's order. We find that even if a civil domestic violence proceeding and a civil abuse and neglect proceeding involve the same underlying facts, the separate proceedings do not implicate the doctrines of *res judicata* or collateral estoppel.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

This case presents issues involving the overlapping jurisdictions of the magistrate, family, and circuit courts of Ohio County, West Virginia. The underlying facts are simple. K.S. and K.C. are the biological parents of B.C., a minor child. K.S. ("the mother") and K.C. ("the father") divorced in 2004. The mother now alleges that the father has been neglectful and physically violent toward B.C.

1

In December 2011, the mother filed a domestic violence petition in magistrate court on behalf of B.C. She alleged several incidents of abuse and neglect by the father against B.C.[1] Based upon the abuse allegations, a magistrate granted an emergency protective order for B.C., and then scheduled a final hearing on the petition before a family court judge. Following the hearing, the family court judge dismissed the mother's domestic violence petition, in part because he did not find the testimony of B.C. to be credible. On March 9, 2012, the circuit court affirmed the family court's dismissal.

On March 12, 2012, the mother filed an abuse and neglect petition in the circuit court. The mother asked the circuit court to terminate the father's parental rights

---

[1] In addition to citing several specific examples of violence by the father against the child, the December 2011 domestic violence petition vaguely alleged that the father had substance abuse problems that led him to neglect the child. We note that a court may not issue a domestic violence protective order based solely upon allegations of neglect, unless those allegations meet one of the five categories of "domestic violence" or "abuse" that are defined in *W.Va. Code* § 48-27-202 [2010]:

> (1) Attempting to cause or intentionally, knowingly or recklessly causing physical harm to another with or without dangerous or deadly weapons;
>
> (2) Placing another in reasonable apprehension of physical harm;
>
> (3) Creating fear of physical harm by harassment, stalking, psychological abuse or threatening acts;
>
> (4) Committing either sexual assault or sexual abuse as those terms are defined in articles eight-b and eight-d, chapter sixty-one of this code; and
>
> (5) Holding, confining, detaining or abducting another person against that person's will.

based upon allegations of abuse and neglect. The circuit court later noted that the allegations were "essentially the same allegations that were made" in the December 2011 domestic violence petition.

After filing the abuse and neglect petition, the mother alleges that an additional incident of domestic violence was committed by the father against B.C. That incident occurred on May 5, 2012, when the mother took B.C. to the Wheeling Police Department to exchange him with the father as required by the parties' shared parenting agreement. Apparently, the father grabbed the child and forcefully tried to take him, and in so doing twisted and fractured the child's wrist. This incident was recorded by video cameras.

On May 7th, the mother filed a new domestic violence petition on B.C.'s behalf against the father. The family court granted the petition and entered an emergency protective order in favor of B.C. The family court found clear and convincing evidence that B.C. "sustained a fractured wrist at the hands of [the father] . . . The same would constitute an act of domestic violence[.]"

On May 9th, the prosecutor filed a criminal complaint against the father charging him with misdemeanor domestic battery for the fracturing of B.C.'s wrist.[2] However, the prosecutor later agreed to a "pretrial diversion" with the father.[3] The prosecutor indicated that he would stay prosecution of the complaint for six months, and

_____

[2] *See W.Va. Code* § 61-2-28(a) [2011].

[3] The prosecutor and K.C. reached this agreement on February 25, 2013.

that if the father complied with certain court orders during that time, the prosecutor would dismiss the domestic battery charge.

Several days later, on May 14th, the Department of Health and Human Resources ("DHHR") made a motion to intervene in the abuse and neglect action still pending in circuit court. DHHR said it wanted to intervene "to provide supportive services to the infant" and "to remedy any circumstances which may be detrimental to the child[.]"

Finally, on June 7th, the mother filed an amended abuse and neglect petition in the circuit court. In this newest petition, the mother added the allegations of domestic violence that the father allegedly committed against B.C. at the police department on May 5, 2012.

Counsel for the father filed a motion to dismiss the original and amended abuse and neglect petitions. The father asserted that the abuse and neglect allegations were the same as the allegations in the domestic violence petition filed in December 2011. Because the family court and circuit court had issued final orders adjudicating the mother's domestic violence allegations and denying the mother any relief, the father argued that the doctrines of *res judicata* and collateral estoppel supported dismissal of the abuse and neglect action.

In an order dated March 18, 2013, the circuit court agreed and dismissed the mother's abuse and neglect petitions. Finding that the allegations in both the original and amended abuse and neglect petitions were "essentially the same" as those made in the December 2011 domestic violence petition, the circuit court determined that the abuse

4

and neglect petitions were barred by the doctrine of *res judicata*. Further, the circuit court found the doctrine of collateral estoppel barred the abuse and neglect petitions because the issues of abuse dispensed with in the domestic violence petition and in the misdemeanor criminal complaint "are factually identical to the issues raised in this action." The circuit court accepted the father's assertion that his ex-wife (the mother) was simply attempting "to relitigate the domestic violence allegations that a Family Court has addressed and dismissed and the criminal charges that the State intends to dismiss."

Counsel for the mother now appeals the circuit court's dismissal order.

## II.
## STANDARD OF REVIEW

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995).

## III.
## ANALYSIS

The circuit court dismissed the mother's original and amended abuse and neglect petitions under the doctrine of *res judicata* and the doctrine of collateral estoppel. Both doctrines can be invoked to halt the prosecution of a lawsuit, or of a claim within a lawsuit, when the claim has been resolved on the merits in a prior proceeding. We find that the circuit court erred in applying these doctrines.

5

In *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997), we set forth a three-part test for determining if a lawsuit was barred by *res judicata*. Syllabus Point 4 of *Blake* states:

> Before the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action. (Emphasis added).

In *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), we outlined a four-part test to determine if a party was collaterally estopped from raising a previously resolved question in a new civil action. We stated in Syllabus Point 1 of *Miller*:

> Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

As we discuss below, the circuit court misapplied both of these doctrines. Generally speaking, two of the key elements to invoking these doctrines are that (1) the party in the current lawsuit, against whom either doctrine is being invoked, must be same as the party in the prior proceeding, and (2) the claims in both suits must essentially be identical. Neither of these elements was satisfied in the instant appeal. As a matter of

6

law, petitions for domestic violence protective orders involve different parties from civil abuse and/or neglect actions. Further, in the instant case, the mother's abuse and neglect petitions raised claims substantially different from those adjudicated in the December 2011 domestic violence petition.

## A. *Identical Parties*

The doctrines of *res judicata* and collateral estoppel prevent parties from relitigating in a new action a claim or issue that was definitively settled by a prior judicial decision. The doctrine of *res judicata* essentially requires that the prior and current actions must involve the same parties;[4] the doctrine of collateral estoppel only requires the party against whom the doctrine is invoked to have been a party[5] to the prior action.

In this case, the circuit court presumed that B.C.'s mother was the same party who pursued both the December 2011 domestic violence petition and the March and June 2012 abuse and neglect petitions.[6] The circuit court concluded that because the mother was the same party asserting "essentially the same" allegations in both these

---

[4] In the rare alternative, individuals in "privity" with the parties may be barred from pursuing an action based upon *res judicata*.

[5] In the rare alternative, an individual in "privity" with a party may be barred from pursuing a claim in a later action because of collateral estoppel.

[6] As we discuss later, the circuit court also seems – incorrectly – to have presumed that the same parties and allegations raised in the abuse and neglect petition were also involved in the criminal action against K.C., and that the resolution of the criminal action also resolved the allegations of abuse and neglect.

7

actions, she could not pursue her abuse and neglect petition. We reject this conclusion by the circuit court because the parties to a civil domestic violence proceeding are inherently different from those in a civil abuse and neglect proceeding.

A domestic violence proceeding is brought "[t]o assure victims of domestic violence the maximum protection from abuse that the law can provide," and to "create a speedy remedy to discourage violence against family or household members[.]" *W.Va. Code* § 48-27-101 (b)(1) and (2) [2001]. Our domestic violence prevention statutes identify three "persons" who may seek protection, for themselves or others, by filing a petition for a protective order. *W.Va. Code* § 48-27-305 [2001] states:

> A petition for a protective order may be filed by:
>
> (1) A person seeking relief under this article for herself or himself;
>
> (2) An adult family or household member for the protection of the victim or for any family or household member who is a minor child or physically or mentally incapacitated to the extent that he or she cannot file on his or her own behalf, or
>
> (3) A person who reported or was a witness to domestic violence and who, as a result, has been abused, threatened, harassed or who has been the subject of other actions intended to intimidate the person.

Specifically, the Legislature has established that the party in interest who pursues a petition for a domestic violence protective order is a "person."

A civil abuse and neglect proceeding is substantially different from a proceeding for a domestic violence protective order. West Virginia's abuse and neglect

8

statutes "establish a mechanism whereby the courts may adjudicate questions arising when the State or a citizen thereof believes there is necessity to change the custodial relationship of natural parent and child because of some dereliction on the part of the parent[.]" *In re Willis*, 157 W.Va. 225, 238, 207 S.E.2d 129, 137 (1973). West Virginia's abuse and neglect statues indicate that a petition may be filed by two entities: either the West Virginia Department of Health and Human Resources ("DHHR") or "a reputable person." *W.Va. Code* § 49-6-1[2005] states, in part:

> (a) If the department or a reputable person believes that a child is neglected or abused, the department or the person may present a petition setting forth the facts to the circuit court. . . . The petition shall be verified by the oath of some credible person having knowledge of the facts. The petition shall allege specific conduct including time and place, how such conduct comes within the statutory definition of neglect or abuse with references thereto, any supportive services provided by the department to remedy the alleged circumstances and the relief sought. . . .

> (b) The petition and notice of the hearing shall be served upon both parents and any other custodian . . . Notice shall also be given to the department, any foster or preadoptive parent, and any relative providing care for the child. . . .

> (c) At the time of the institution of any proceeding under this article, the department shall provide supportive services in an effort to remedy circumstances detrimental to a child.

Our abuse and neglect statutes certainly permit "a reputable person" to initiate a petition for relief. "By permitting an individual who believes that abuse and/or neglect is occurring, or has occurred, to file a petition alleging such circumstances, and by requiring this person to also have sufficient knowledge of the facts underlying this

belief to verify the petition, the statutory framework attempts to protect parents, custodians, guardians, and care givers from unsubstantiated charges while permitting the filing of petitions seeking to protect the health, safety, and well-being of children." *State ex rel. Paul B. v. Hill*, 201 W.Va. 248, 256, 496 S.E.2d 198, 206 (1997).

However, while "a reputable person" may *initiate* an abuse and neglect action under *W.Va. Code* § 49-6-1, it does not mean that the reputable person has any stake in the action or that the action is being pursued on behalf of the reputable person as the party in interest. Instead, our cases make clear that an abuse and neglect action is prosecuted on behalf of one party, and only one party: the State of West Virginia, in its role as *parens patriae*.

The doctrine of *parens patriae* allows the State "in its capacity as provider of protection to those unable to care for themselves" to prosecute a suit "on behalf of someone who is under a legal disability." *Black's Law Dictionary* 1221 (9th Ed. 2009). The State, in its role of *parens patriae*, "[s]tand[s] at the side of the natural parents with benign, but continuing, interest" in the care and custody of children. *In re Willis*, 157 W.Va. at 238, 207 S.E.2d at 137. The Legislature first adopted our abuse, neglect and child welfare statutes in 1915 as a way to "afford special protection to persons of tender years," and crafted those statutes as "an obvious expression of our lawmakers to join the then modern sociological trend by the codification of the doctrine of *parens patriae*." *State ex rel. Slatton v. Boles*, 147 W.Va. 674, 679, 130 S.E.2d 192, 196 (1963). As Justice Miller observed:

10

> While parents enjoy an inherent right to the care and custody of their own children, the State in its recognized role of *parens patriae* is the ultimate protector of the rights of minors. The State has a substantial interest in providing for their health, safety, and welfare, and may properly step in to do so when necessary. . . . . In cases of suspected abuse or neglect, the State has a clear interest in protecting the child and may, if necessary, separate abusive or neglectful parents from their children.

*In the Interest of Betty J.W.*, 179 W.Va. 605, 608, 371 S.E.2d 326, 329 (1988). Hence, as we said in Syllabus Point 5 of *In re Willis*, *supra*:

> Though constitutionally protected, the right of the natural parent to the custody of minor children is not absolute and it may be limited or terminated by the State, as *parens patriae*, if the parent is proved unfit to be entrusted with child care.

While a civil abuse and neglect action is pursued solely under the State's *parens patriae* authority, "the legislature has made DHHR the State's representative." Syllabus Point 4, in part, *State ex rel. Diva P. v. Kaufman*, 200 W.Va. 555, 490 S.E.2d 642 (1997). "DHHR is the client of county prosecutors," and "prosecutors must *cooperate* with DHHR's efforts to pursue civil abuse and neglect actions." *Id*. And it is the circuit court that has exclusive "jurisdiction to entertain an abuse and neglect petition and to conduct proceedings in accordance therewith[.]" Syllabus Point 3, *State ex rel. Paul B. v. Hill*, 201 W.Va. 248, 496 S.E.2d 198 (1997).

To summarize, under *W.Va. Code* § 48-27-305, a petition for a domestic violence protective order may be prosecuted by three classes of people: (1) a person individually seeking relief from domestic violence; (2) an adult person seeking relief from domestic violence on behalf of a family or household member, such as a minor

11

child; or (3) a person who is being abused, threatened or harassed because they witnessed or reported domestic violence. However, while a civil abuse and neglect action pursuant to *W.Va. Code* § 49-6-1 may be initiated by either the West Virginia Department of Health and Human Resources or "a reputable person," the action is prosecuted solely on behalf of the State of West Virginia in its role as *parens patriae*.

Comparing these statutory schemes, it is clear that the party in interest in a domestic violence action is, as a matter of law, different from the party in interest in an abuse and neglect action. Accordingly, we hold that a petition for a domestic violence protective order under *W.Va. Code* § 48-27-101, *et seq.*, and a petition alleging abuse and/or neglect under *W.Va. Code* § 49-6-1, *et seq.*, may be filed upon the same facts without consequences under the doctrine of *res judicata* or the doctrine of collateral estoppel.

Applied to the instant case, it is obvious that the circuit court erred in dismissing the mother's petitions alleging abuse and neglect under the doctrines of *res judicata* and collateral estoppel. The mother unsuccessfully pursued her December 2011 petition for a domestic violence protective order on behalf of her son, B.C. However, when she alleged these same acts of domestic violence in her March 2012 abuse and neglect petition, she did so only as "a reputable person."[7] Upon the filing of the abuse

---

[7] Before the circuit court, counsel for the father argued that the mother was not a "reputable person" under *W.Va. Code* § 49-6-1 "because she is, in part, forum shopping" and "is clearly showing a level of bias and animosity that the Legislature could not have meant" when enacting the abuse and neglect statutes. In its order, the circuit court declined to address this argument by the father.

(continued . . .)

12

and neglect petition, it was the State of West Virginia who became the prosecuting party in interest. The DHHR, as the agent for the State, was then charged with investigating the allegations and pursuing the best course to assure the "care, safety and guidance," and the "mental and physical welfare," of the minor child. *W.Va. Code* § 49-1-1(a)(1) and (2). Put simply, the mother was neither the same party nor was she in privity with the parties in both the December 2011 domestic violence action and the March 2012 abuse and neglect action. The circuit court erred in holding otherwise.

## B. *Identical question*

The doctrines of *res judicata* and collateral estoppel bar the relitigation of a claim or issue previously resolved in another suit. *Res judicata* (also called "claim preclusion") generally applies if "the cause of action identified for resolution in the subsequent proceeding" is "identical to the cause of action determined in the prior action," or could have been raised and determined in the prior action. Syllabus Point 4, *Blake*, *supra*. Collateral estoppel (also called "issue preclusion") applies if the "issue previously decided is identical to the one presented in the action in question." Syllabus

A "reputable person" under *W.Va. Code* § 49-6-1 is simply a person who "believes that abuse and/or neglect is occurring, or has occurred," and who has "sufficient knowledge of the facts underlying this belief to verify the petition." *State ex rel. Paul B. v. Hill*, 201 W.Va. at 256, 496 S.E.2d at 206. In *Paul B.*, we approved of an abuse and neglect petition filed by respite caregivers whose belief about the existence of abuse and/or neglect was based upon "personal familiarity with and observations of the children during their provision of respite care[.]" 201 W.Va. at 257, 496 S.E.2d at 207. On the appendix record presented to this Court, it appears that the mother meets these standards to qualify as a "reputable person."

13

Point 1, *Miller*, *supra*. An "issue" is "any right, fact or legal matter which is put in issue[.]" *Miller*, 194 W.Va. at 9, 459 S.E.2d at 120. In the instant case, the circuit court ruled that the causes of action and issues in both the December 2011 domestic violence petition and the March and June 2012 abuse and neglect petitions were identical "because the same evidence supports each of these separate and various causes of action [and issues]."

The circuit court's ruling was clearly in error, because the court failed to consider that the claims and issues that can be raised before, and the relief that could be granted by, the circuit court in an abuse and neglect action are substantially different and broader than the claims, issues and relief that can be considered by the magistrate and family courts in a proceeding for a domestic violence protective order. A domestic violence action is intended solely as a short-term, temporary response to prevent domestic violence; an abuse and neglect action is designed to craft long-term solutions to both violence and neglect in the household. While the circuit courts have concurrent jurisdiction with the family and magistrate courts over domestic violence proceedings, only circuit courts have jurisdiction to preside over abuse and neglect actions. *Compare W.Va. Code* § 48-27-301(a) [2012] ("Circuit courts, family courts and magistrate courts, have concurrent jurisdiction over domestic violence proceedings"); *W.Va. Code* 49-6-1(a) (if a child is neglected or abused, "the department or the person may present a petition setting forth the facts to the circuit court").

To state it succinctly, many of the long-term, comprehensive remedies that a circuit court can order in an abuse and neglect case are simply not available in a

14

domestic violence action. We perceive that, in many instances, the same factual scenario of domestic abuse and/or neglect could support not only a civil abuse and/or neglect action and an action for a domestic violence protective order, but could also simultaneously support a criminal prosecution, a civil tort action for damages, and an action in family court for divorce or allocation of parental responsibility. Each of these actions involves different parties, different causes of action, different burdens of proof, and/or different forms of relief not available in one court or another.

Additionally, the circuit court failed to make any reference to the mother's amended abuse and neglect petition, which raised allegations of violence against the child that happened in May 2012. Counsel for the mother plainly expressed to the circuit court that new, unresolved, unadjudicated facts supported the petition. The new issues raised in the amended petition occurred five months after the events detailed in the December 2011 domestic violence action, and therefore could not have been identical to the previously adjudicated questions. Yet the circuit court still went on find the issues raised by the amended petition were "essentially the same" as those in the domestic violence action, and dismissed the amended petition as barred by the doctrines of *res judicata* and collateral estoppel.

Finally, we are troubled by one additional conclusion by the circuit court. The mother was not a party to the criminal action filed in magistrate court. The criminal case was initiated by the prosecutor, and it was the prosecutor who entered into a bargain with the father. Still, counsel for the father argued that the abuse and neglect petition was "simply another attempt" by the mother "to re-litigate the domestic violence . . . criminal

15

charges that the State intends to dismiss." The circuit court accepted this argument, and found that the mother "had a full and fair opportunity to litigate all of the issues" in the criminal proceeding in magistrate court. The circuit court concluded that the mother's abuse and neglect assertions were collaterally estopped, in part, because they were "issues of (domestic) abuse . . . dispensed with by the State in the criminal action[.]"

This conclusion by the circuit court was in error. This Court has determined that civil abuse and neglect proceedings are to be treated as separate and apart from criminal proceedings arising from child abuse or neglect. As we stated in Syllabus Point 2 of *Matter of Taylor B*., 201 W.Va. 60, 491 S.E.2d 607 (1997),

> A civil child abuse and neglect petition instituted by the West Virginia Department of Health and Human Resources pursuant to Code, 49–6–1 et seq., is not subject to dismissal pursuant to the terms of a plea bargain between a county prosecutor and a criminal defendant in a related child abuse prosecution.

This is because "civil abuse and neglect proceedings focus directly upon the safety and well-being of the child and are not simply 'companion cases' to criminal prosecutions." 201 W.Va. at 66, 491 S.E.2d at 613. The circuit court erred when it found that the allegations in the abuse and neglect petition were collaterally estopped by the prosecutor's choice to dismiss the criminal charges against the father.

In sum, because the claims and issues resolved in the December 2011 domestic violence proceeding were different from those in the original and amended abuse and neglect petitions, the circuit court erred in finding the mother's abuse and neglect action was precluded by the doctrines of *res judicata* and collateral estoppel.

16

**IV.**
**CONCLUSION**

The circuit court erred in finding that the original and amended abuse and neglect petitions were barred by the doctrines of *res judicata* and collateral estoppel. Accordingly, the circuit court's March 18, 2013, order must be reversed.

Reversed and remanded.

17